FILED

# UNITED STATES DISTRICT COURT

for the

Northern District of Oklahoma

FEB 2 4 2025

Heidi D. Campbell, Clerk
U.S. DISTRICT COURT

| | |
|---|---|
| In the Matter of the Search of<br>*MOTOROLA CELLPHONE BLUE IN COLOR AND A WHITE*<br>*APPLE IPAD  located at Rogers County Sheriff's Office Case*<br>*Number R23025916 and Property Number 46096 and 46097* | )<br>)<br>)<br>)<br>) |

Case No. 25MJ-132-MTS

**FILED UNDER SEAL**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment "A"

located in the __Northern__ District of __Oklahoma__, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment "B"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| **18 U.S.C. §2252(a)(2)**<br>**18 U.S.C. §2252(a)(4)(B)** | **Receipt and Distribution of Child Pornography**<br>**Possession of and Access with Intent to View Child Pornography** |

The application is based on these facts:
  **See Affidavit of John Haning, attached hereto**.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

TFO John Haning, HSI
*Printed name and title*

Subscribed and sworn to by phone.

Date: 2-24-2025

_____
*Judge's signature*

City and state:  Tulsa, Oklahoma

Mark T. Steele, U.S. Magistrate Judge
*Printed name and title*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

In the Matter of the Search of
MOTOROLA CELLPHONE BLUE
IN COLOR AND A WHITE APPLE
IPAD located at Rogers County
Sheriff's Office Case Number
R23025916 and Property Number
46096 and 46097

Case No. _____

FILED UNDER SEAL

## Affidavit in Support of an Application
## Under Rule 41 for a Warrant to Search and Seize

I, John Haning, being first duly sworn under oath, depose and state:

### Introduction and Agent Background

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I am a federal law enforcement officer as defined under Rule 41(a)(2)(C) and am authorized to request this search warrant because I am a government agent who is engaged in enforcing federal criminal laws and I am within the category of officers authorized by the Attorney General to request such a warrant. I am a Task Force Officer with the Department of Homeland Security (DHS), Homeland Security Investigations (HSI).

3. I am an Investigator for the Rogers County Sheriff's Office and have been so employed since 2015 as a Deputy Sheriff Investigator. I was trained by the State of Oklahoma Council on Law Enforcement Education and hold an Advance Peace Officer Certification. During my career in law enforcement, I have accumulated approximately 3,000 hours of law enforcement continuing education hours and have participated in numerous cases involving sexual crimes against children. I have participated in the investigation of cases involving the use of computers and the Internet to commit violations of child exploitation laws. I have participated in all aspects of child pornography investigations, including conducting surveillance, interviewing suspects, and executing arrest and search warrants. I have received training and gained experience in child exploitation investigations, interviewing and interrogation techniques, arrest procedures, search warrant applications, the execution of searches and seizures, and various other criminal laws and procedures. As an Investigator and Deputy Sheriff, I have served as the affiant on previous search warrants, complaints, court orders, and arrest warrants. I graduated from East Central University with a Masters, Rogers State University in 2010 with a bachelor's degree in Criminal Justice Administration. I am currently assigned to the Rogers County Sheriff's Office in Claremore, Oklahoma as an Investigator. I am assigned to work a variety of criminal matters, including violent crimes against children, Internet crimes against children, and human trafficking.

4. As part of my duties as an Task Force Officer with HSI , I investigate criminal violations relating to the coercion or enticement of a minor, interstate

travel to engage in illicit sexual conduct, child pornography, including the production, transportation, distribution, receipt, and possession of child pornography, in violation of 18 U.S.C. §§ 2251, 2252, 2252A, 2422, and 2423. I have received training in the areas of child pornography and child exploitation and have observed and reviewed numerous examples of child pornography, as defined in 18 U.S.C. § 2256, in all forms of media. I have been involved in several child exploitation investigations and am familiar with the tactics used by individuals who engage in child exploitation.

5. I am familiar with the facts and circumstances of this investigation. The facts set forth in this affidavit are based on knowledge obtained from other law enforcement officers, my review of documents related to this investigation and conversations with others who have personal knowledge of the events and circumstances described herein. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact I or others have learned during the course of this investigation.

6. Based on my training, experience, and the facts set forth in this affidavit, there is probable cause to believe that evidence of violations of 18 U.S.C. §2252(a)(2) – Distribution and Receipt of Child Pornography and 18 U.S.C. §2252(a)(4)(B) – Possession of and Access with Intent to View Child Pornography will be located in the electronically stored information described in Attachment B and is recorded on the devices described in Attachment A.

3

## Identification of the Device to be Examined

7. The property to be searched is a MOTOROLA CELLPHONE BLUE IN COLOR AND A WHITE APPLE IPAD TAKEN FROM 4701 e 430 ROAD, OOLOGAH, OK ON 12/28/2023, hereinafter the "Devices." The Devices are currently located at Rogers County Sheriff's Office (RCSO) Investigative Division, 515 East Patti Page Boulevard, Claremore Oklahoma, 74017 under RCSO Case Number R23025916 and Property Number 46096 and 46097.

8. The applied-for warrant would authorize the forensic examination of the Devices for the purpose of identifying electronically stored data particularly described in Attachment B.

## Probable Cause

9. Owasso Police Department received a Cyber tip 83856640 and 83856640 on January 12th 2021. In the cybertip the user name that was used was "Childress sanguine" and the phone number provided was 1-918-403-9342. This user name sent images of child pornography to a Zachary Madole whose phone number is +1918-857-0003. The Owasso Police Detective made several legal services to the the cell phone provider AT&T and was able to determine the phone number, 1-918-403-9342, was registered to Rebacka Kathleen the mother of Elijah Hendericks. The detective even called the number 1-918-403-9342 and spoke to a male who identified

himself as Elijah Hendricks and stated that it was his phone number that he has used for the past two years. On July 12, 2023 Oologah police took a report from Josiah Hendricks, who is the brother of Elijah Hendericks. Josiah stated that he had talked to his mother, Rebekah Beck, who told him about a conversation with Elijah HENDRICKS. Rebekah had stated that HENDRICKS had told her that he was attracted to young children. Rebekah also stated that HENDRICKS' wife, Montana Trost Hendricks, found child pornography on his cell phone. Josiah also stated that his mother told him that HENDRICKS had stated that he needed help and did not receive any satisfaction out of the pornography. It was also documented that Zachary Madole, the person who received images of child pronography during the intial cybertip, admitted that he indeed received these images from Elijah Hendricks.

10. On December 28, 2023, I served a search warrant issued by The State of Oklahoma, signed by the District Judge from Rogers County District 12, at the residence of Elijah Hendericks (4701 East 430 Road Oologah, Northern District of Oklahoma). During the execution of the search warrant, Elijah Hendericks (under constant) showed me the hidden location on his cellphone where files were hidden that contained child sexual assault material. He even provided the passcode to the phone and the hidden calculator application. Inside the hidden calculator application, several photos and videos were seen by your affiant. They were images/videos of child sexual assault material. Elijah Hendericks also stated that his wife had caught him earlier in the year with child porn and that he had to conceal it from her on his phone since she goes through his devices a lot. An ipad was also

located in the cabinet inside the kitchen of the residence. The ipad was not discussed but Mr. Hendericks had access to it. I know from my training and experience, that an iPad device can access the internet, as well as send text messages depending on the user's applications, settings, and/or data subscriptions. Additionally, I know from my training and experience, that it is not uncommon for offenders to use multiple devices to access, download, and store child pornogrpahy. Pursuant to a state search warrant, the device(s) were taken to Homeland Security Investigation computer analyst Anthony Meter, who used forensic software to extract data from the devices. He had difficulty getting access to the calculator vault on the cell phone and was unable to retrive the full videos but we were able to see small images that matched the videos/photos I was shown by Elijah Hendericks. We will be using another process to extract the data that is concealed in the locked calculator application to retrive the data. This warrant is out of an abundance of caution as the case is now being investigated as a case for federal prosecution.

11. The Devices are currently in storage at Roger's County Sheriff's Office Investigative Division, 515 East Patti Page Boulevard, Claremore, Oklahoma 74017 within the jurisdictional boundary of the Northern District of Oklahoma. In my training and experience, I know that the Devices have been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Devices first came into the possession of the Roger's County Sheriff's Office.

**Technical Terms**

12. Based on my training and experience, I use the following technical terms to convey the following meanings:

    a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

    b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store

7

their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic

sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

d. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

13. Based on my training, experience, and research, I know that the Device has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, access to the internet and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

**Electronic Storage and Forensic Analysis**

14. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

15. I know that cellular telephones are often equipped with digital cameras and those phones possess the capability to transmit and/or store electronic images. I

know that in many cases, cellular telephones maintain photographs of illegal activities, including coercion and enticement of a minor, transfer of obscene materials to minors, and receipt of child pornography. These photos are sometimes stored in their cellular phones and often are transmitted or sent from one electronic media device to another. I also know that cellular phones may also contain notes regarding potential illegal acts that are recorded by the subject who possesses the electronics. Furthermore, I know that text messages and emails are often used by two or more persons to communicate information regarding illegal activities, between principals and co-conspirators of those crimes.

16. I know that cellular telephones are utilized by the majority of individuals in the United States and have become a staple of communication between individuals using text messaging, visual and audible communications (telephone calls and FaceTime type communications) as well as applications like "Kick Live App," "Whatsapp" and "GroupMe." Additionally, individuals utilize their cellular devices to take pictures, keep notes, as a GPS (global positioning System) device, and even to conduct illicit or illegal activity. Communications on phones are kept for long periods and transferred from one phone to another when replaced. This is done through the use of Cloud storage and direct transfer conducted at the time of purchase or by the individual themselves. Individuals utilize this method as not to lose data that is stored on the phone such as contacts, photos, notes, and other important information to the individual. This data includes contacts used to conduct

illegal activities to include coercion and enticement of a minor, transfer of obscene materials to minors, and receipt of child pornography.

17. Cellular telephones are often used to facilitate offenses and allow criminals to maintain communication with each other before, during and after the commission of offenses. I am aware that cellular telephones have the capacity to store a vast amount of information, including but not limited to: telephone numbers, voice messages, text messages, e-mail, photographs, videos, address books, records, phone call histories, contact and other information. This information may be contained on the cellular telephone.

18. *Forensic evidence*. As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

19. *Nature of examination*. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

20. *Manner of execution*. Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

21. *Methods of examination*. In conducting this examination, law enforcement personnel may use various methods to locate evidence and instrumentalities of the crime(s) under investigation, including but not limited to undertaking a cursory inspection of all information within the Device. This method is analogous to cursorily inspecting all the files in a file cabinet in an office to determine which paper evidence is subject to seizure. Although law enforcement personnel may use other methods as well, particularly including keyword searches, I know that keyword searches and similar methods are typically inadequate to detect all information subject to seizure. As an initial matter, keyword searches work only for text data, yet many types of files commonly associated with stored cellular device data, such as pictures and videos, do not store as searchable text. Moreover, even as to text data, keyword searches cannot be relied upon to capture all relevant communications associated with a cellular device, as it is impossible to know in advance all of the unique words or phrases investigative subjects will use in their communications. Consequently, often many communications in cellular device data that are relevant to an investigation do not contain any searched keywords.

## Conclusion

22. Based on the information above, I submit that there is probable cause for a search warrant authorizing the examination of the Device described in Attachment A to seek the items described in Attachment B.

23. I request to be allowed to share this affidavit and the information obtained from this search with any government agency, to include state and local agencies investigating or aiding in the investigation of this case or related matters, and to disclose those materials as necessary to comply with discovery and disclosure obligations in any prosecutions from this matter.

Respectfully submitted,

John Haning
Task Force Officer
Homeland Security Investigations

Subscribed and sworn to by phone on February 24, 2025.

MARK T. STEELE
UNITED STATES MAGISTRATE JUDGE

# ATTACHMENT A

## Property to be Searched



The property to be searched is a MOTOROLA CELLPHONE BLUE IN COLOR
AND A WHITE APPLE IPAD TAKEN FROM, 4701 e 430 ROAD, OOLOGAH, OK on
December 28, 2023, hereinafter the "Devices." The Devices are currently located at
Rogers County Sheriff's Office (RCSO) Investigative Division 515 East Patti Page
Boulevard, Claremore Oklahoma, 74017 under RCSO Case Number R23025916 and
Property Number 46096 and 46097. This warrant authorizes the forensic
examination of the Devices for the purpose of identifying the electronically stored
information described in Attachment B.

## ATTACHMENT B

### Particular Things to be Seized

All records on the Device(s) described in Attachment A that relate to violations of 18 U.S.C. §2252(a)(2)- Receipt and Distribution of Child Pornography and 18 U.S.C. §2252(a)(4)(B) – Possession of and Access with Intent to View Child Pornography, including:

A. Images/videos/gifs of child pornography or child erotica; files containing images/videos/gifs; and data of any type relating to the sexual exploitation of minors or a sexual interest in children, material related to the possession thereof, and data of any type related to any person employing, using, persuading, inducing, enticing, or coercing any minor to engage in any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting such visual depiction of such conduct, in any form wherever it may be stored or found, including, but not limited to:

i. Graphic Interchange formats and/or photographs, and other visual depictions of such Graphic Interchange formats (including, but not limited to, JPG, GIF, TIF, AVI, and MPEG) of child pornography; files relating to the distribution, receipt, or possession of child pornography, or information pertaining to an interest in child pornography;

ii. Files in any form containing the visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256 or relating to the sexual exploitation of minors; and

iii. Stories, text-based files, motion pictures, films, videos, and other recordings of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256 or relating to the sexual exploitation of minors.

B. Information, correspondence, records, documents or other materials pertaining to the possession, receipt or distribution of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256, or pertaining to the sexual exploitation of minors or a sexual interest in children, that were transmitted or received using computer, cellular device, personal digital assistant, or some other facility or means of interstate or foreign commerce, common carrier, or the U.S. mail including, but not limited to:

i. Correspondence including, but not limited to, electronic mail, chat logs, and electronic messages, establishing possession, access to, or transmission through interstate or foreign commerce, including by United States mail or by computer, of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256 or relating to the sexual exploitation of minors or a sexual interest in children;

iii. Any and all electronic and/or digital records and/or documents pertaining to the preparation, purchase, and acquisition of names or lists of names to be used in connection with the purchase, sale, trade, or transmission, through interstate commerce including by United States mail or by computer, any visual depiction of a minor engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256 or relating to the sexual exploitation of minors;

iv. Any and all electronic and/or digital records and/or documents including any and all address books, names, and lists of names and addresses of minors visually depicted while engaging in sexually explicit conduct, defined in Title 18, United States Code, Section 2256; or relating to the sexual exploitation of minors;

v. Any and all records of Internet usage including usernames and e-mail addresses and identities assumed for the purposes of communication on the Internet. These records may include billing and subscriber records, chat room logs, e-mail messages, and include electronic files in a computer and on other data storage mediums;

vi. Any physical keys, encryption devices, dongles and similar physical items necessary to access computer equipment, storage devices or data;

vii. Any passwords, password files, test keys, encryption codes or other

information necessary to access the computer equipment, storage devices

or data; and

viii. Files, records, programs, logs, electronic communications, scanning

programs, financial records, hacking software, or router configuration

software.

C. Records or other items which evidence ownership, use, or control of the

Devices described in Attachment A.

D. Credit card information including but not limited to bills and payment

records, including but not limited to records of internet access.

E. Any and all information, correspondence (including emails), records,

documents and/or other materials related to contacts, in whatever form, with

minors involving the production, possession and/or distribution of child

pornography and the attempt or act of educing, enticing, coercing, or persuading

a minor to engage in sexual acts.

As used above, the terms "records" and "information" includes all forms of

creation or storage, including any form of computer or electronic storage.

The term "computer" includes all types of electronic, magnetic, optical,

electrochemical, or other high speed data processing devices performing logical,

arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

The term "storage medium" includes any physical object upon which computer data can be recorded, including external and internal hard drives, flash drives, thumb drives, micro SD cards, macro SD cards, DVDs, gaming systems, SIM cards, cellular phones capable of storage, floppy disks, compact discs, magnetic tapes, memory cards, memory chips, and other magnetic or optical media.